UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TRACY LEE PEHRSON, )
 )
    Plaintiff )
 )
v. ) 1:10-cv-00289-GZS
 )
SOCIAL SECURITY ADMINISTRATION )
COMMISSIONER, )
 )
    Defendant )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Tracy Lee Pehrson retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Pehrson's application for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Pehrson commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the February 17, 2010, decision of the Administrative Law Judge,[1] which tracks the familiar, five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 9, R. 4-14.[2])

At step 1 of the sequential evaluation process, the Judge found that Pehrson met the insured status requirements of Title II through December 31, 2010, and has not engaged in

---

[1]     The administrative law judge who signed the decision is not the administrative law judge who conducted the administrative hearing. This concern is addressed in the discussion section.
[2]     The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 9.

substantial gainful activity since August 15, 2006, the amended date of alleged onset of disability. (Findings 1 & 2, R. 6.) In her statement of errors, Pehrson has volunteered that her onset date should now be regarded as August 31, 2008. (Statement of Errors at 2, Doc. No. 12.)

At step 2, the Judge found that Pehrson has the following severe physical impairments: fibromyalgia, degenerative disk disease in the lumbar spine with radiculopathy, and obesity. The Judge found that depression did not amount to a severe impairment for purposes of the Social Security Act, assessing only mild limitation in activities of daily living, social functioning, and maintaining concentration, persistence, and pace, and no episodes of decompensation. In this finding the Judge relied on the consultative evaluations of three psychiatric experts, the last evaluation being dated October 2008. The Judge also found certain cardiovascular and musculoskeletal conditions to be non-severe. (Finding 3, R. 7-8.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Finding 4, R. 8.)

Preliminary to further analysis at steps 4 and 5, the Judge performed a residual functional capacity assessment. The Judge found that Pehrson's combined impairments and conditions restrict her to light work and require that she be able to change positions every 30 minutes to relieve pain and not have to assume certain postures more than occasionally. The Judge placed significant weight on the consultative mental status examination of consultative examiner Donna Gates, Ph.D. (May 2008, Ex. 10F), with respect to mental health findings. The Judge rejected a contrary opinion offered by a nurse practitioner (Dec. 2009, Ex. 39F), despite more than a year of counseling subsequent to the Gates examination, finding it overstated and contrary to what the overall record disclosed. On physical questions, the Judge relied on physical residual functional

2

capacity assessments from two consulting physicians. The Judge also regarded Pehrson as insufficiently motivated to attend physical therapy or participate in an exercise routine, without valid justification. (Finding 5, R. 8-12.) The record lacks a physical assessment of work ability from a treating source.

At step 4, the Judge found that this degree of limitation precluded past relevant work as a nursery school attendant, certified nurse's assistant, and kitchen helper. (Finding 6, R. 12.) Pehrson was born in 1972, has an associate's degree in child development, and can communicate in English. (Finding 7-8, R. 12.) In light of the residual functional capacity finding and this vocational profile, the Judge found at step 5 that Pehrson is capable of substantial gainful activity in representative occupations such as cashier 2, gate guard, ticker seller, and photocopy operator. The Judge relied on testimony from a vocational expert in support of this finding. (Finding 10, R. 12-13.) This resulted in a finding of "not disabled" for the period between August 15, 2006, and the date of decision. (Findings 10, 11, R. 13.)

### Discussion of Plaintiff's Statement of Errors

Pehrson raises the following errors: (1) an unspecified error associated with having one ALJ conduct the hearing and another sign the decision; (2) error in failing to treat depression as severe impairment; (3) error in failing to note a more recent downward spiral in condition and functioning; (4) error in failing to give weight to a nurse practitioner's recent opinion on mental residual functional capacity; and (5) failure to credit subjective complaints. (Statement of Errors, Doc. No. 12.) Pehrson's various challenges to the administrative decision can be addressed on two fronts. The first concerns the technical challenge to the fact that the administrative law judge who signed the decision was not the judge who conducted the hearing. The second involves the allegations that the Judge's residual functional capacity finding is not

3

supported by substantial evidence. Pehrson does not challenge the ultimate finding of not disabled at step 5, except insofar as that finding would be undone by a reversal of the Judge's residual functional capacity finding.

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

A. The Signature Issue

The administrative decision under review is signed: "John F. Edwards, for Guy E. Fletcher." (R. 14.) Pehrson makes note of this signature line in a footnote in her statement of errors. She states that she does not know which ALJ "actually considered the evidence and made and wrote the Decision," but objects "to the extent that a decision was made and issued by a judge who had not presided over the hearing and heard and observed witnesses personally," or should there be some other impropriety in this procedure. (Statement of Errors at 1 n.1.) At oral argument, the Commissioner explained that Judge Fletcher wrote the decision but Judge Edwards signed it. According to the Commissioner, the Social Security Administration's internal policies (HALLEX I-2-8-40)[3] permit a "Hearing Office Chief ALJ" to sign for another ALJ with written authorization. The Commissioner has not produced Judge Fletcher's

---

[3] SSA Office of Disability Adjudication and Review, Hearings, Appeals and Litigation Law Manual (HALLEX) § I-2-8-40 ("Administrative Law Judge Conducts Hearing but is Unavailable to Issue Decision"). For full text see http://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-40.html (last updated May 16, 2008).

authorization, but represented at oral argument that Judge Edwards merely signed for Judge Fletcher and that Judge Fletcher wrote the decision.

This situation calls for reversal only if Judge Edwards wrote the decision, because he did not preside at the administrative hearing. The record does not indicate that Judge Edwards wrote the decision. The record simply indicates that Judge Edwards signed the decision for Judge Fletcher. Additionally, the first page of the decision recites: "On January 12, 2010, the undersigned held a video hearing . . . and the undersigned presided over the hearing from Portland, Maine." (R. 4.) This language reinforces the presumption that Judge Fletcher wrote his own decision and that Judge Edwards simply signed it in Judge Fletcher's absence. In the absence of some suggestion of actual prejudice, I recommend that the Court not vacate the decision simply so that Judge Fletcher can sign it personally. See, e.g., Kendall v. Astrue, Civ. No. 09-239-GWU, 2010 WL 1994912, *4 (E.D. Ky. May 19, 2010) (declining to remand on this question in the absence of a "convincing showing of prejudice").

B. Substantial Evidence

The Commissioner takes the position that the three consulting expert opinions supply substantial evidence in support of the Judge's finding concerning Pehrson's psychiatric condition and functioning. The Commissioner views Pehrson's psychiatric condition as a byproduct of temporary life stressors, including divorce, and maintains that the more recent records do not predict severe impairment and demonstrate the benefit of therapy and medication management. The parties dispute what weight the recent nurse practitioner opinion on mental RFC should receive and whether there is any underlying diagnosis from an acceptable medical source.

Exhibit 39F is the December 16, 2009, opinion of Michelle Henneberry, PNH/NP, which she supplied on the Administration's mental impairment questionnaire form. NP Henneberry

5

indicated on the form that she began counseling Pehrson March 30, 2009, and provided monthly treatment. (R. 774.) NP Henneberry's progress notes (Bangor Psychiatric Associates) are found at exhibit 30F. NP Henneberry identifies depression, anxiety attacks, and PTSD as relevant conditions. Her latest progress note of record offers diagnoses of major depressive mood disorder and prolonged PTSD. (R. 562.) According to her, Pehrson is "unable to meet competitive standards" in any mental area of functioning other than behaving and dressing appropriately. (R. 776-77.) She says that Pehrson has mild limitation in terms of activities of daily living, moderate limitations in social functioning, and marked difficulties maintaining concentration, persistence, and pace. She also contends that Pehrson has suffered an episode of decompensation of at least two week's duration. (R. 778.)

The Judge was not impressed by this opinion evidence. According to him, NP Henneberry's opinion is overstated and not credible. (R. 11.) Pehrson argues that the opinion should receive significant weight because depression is medically determinable from the record and Pehrson was receiving treatment for the condition. Based on the citations given by counsel, I have identified only two relevant references to depression by acceptable medical sources (physicians or psychologists). First are the references by the consulting experts. Scott Hoch, Ph.D., and Peter Allen, Ph.D., both indicated the presence of depression in the medical notes and the existence of medications to affect mood, but assessed only non-severe mental health symptoms. (Exs. 11F, R. 369; 16F, R. 416.) These reviewers had the mental status examination report of Dr. Gates to consider, who stated that there were no clinical signs of depression. (Ex. 10F, R. 354.) These assessments do not supply any underlying clinical diagnosis. Otherwise, Pehrson cites a record from Northeast Pain Management stating: "I do also think that her current depression is exacerbating her symptoms and making all aspects of her life difficult to manage."

6

(Ex. 31F, R. 603.) According to the treatment note, Pehrson went to Northeast Pain Management on referral for low back and bilateral thigh pain. (R. 600.) The note was signed on the date of Pehrson's visit by a nurse practitioner and co-signed more than two weeks later by a supervising M.D. (Id.) This reference further supports the existence of depression, of course, but it does not supply a clinical diagnosis. Beyond these references there are a few references by additional non-acceptable medical sources. Progress notes from January and February of 2007 indicate an assessment of major depression by an advance practice nurse. (Ex. 6F, R. 215.) There is also a course of counseling in the 2009 timeframe by a social worker whose notes allude to a generalized anxiety disorder with a history of PTSD. (Ex. 38F, R. 753.) A review of these records reflects that Pehrson went through a divorce and commenced a new relationship subsequent to the assessments of the DDS consulting experts.

Pehrson's records certainly contain longstanding references to depression, anxiety, and psychosocial stressors. The Commissioner conceded at oral argument that this case involves a medically-determinable condition, albeit a non-severe condition. In particular, depression is associated with a long history of various social stressors including child-rearing concerns and marital issues. Pehrson now concedes that a severe condition was not in existence when the DDS consultants performed their evaluations of her mental functioning, but argues that the Judge failed to recognize a significant "downward spiral" in the wake of their assessments. (Statement of Errors at 3.) According to her, this downturn related to a parallel worsening of her chronic pain. However, the record Pehrson has generated does not include an assessment of her physical functioning by one of her treatment providers, so her allegations of worsening physical condition do not warrant an inference that the 2008 mental status report of Dr. Gates and the 2008 mental RFC assessment of Dr. Hoch are no longer substantial evidence based on changes in her physical

7

status.

Given this peculiar presentation, the Judge's determination that depression is not established as a severe impairment for purposes of step 2 is not erroneous. At step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. §§ 404.1513(a), 404.1528, 416.913(a), 416.928. The opinions of the consulting experts and the Judge's own application of the psychiatric review technique supply substantial evidence in support of this finding. As for residual functional capacity, the Judge appropriately evaluated the longitudinal evidence of mental health symptoms, including the notes maintained by non-acceptable medical sources. Id. §§ 404.1545(a)(2), 416.945(a)(2) (providing that the measure of a claimant's RFC is a function of "all of [the] medically determinable impairments of which [the Commissioner is] aware," including those found not sufficiently severe for purposes of steps 2 and 3).

Given the fact that the year 2009 progress notes and opinion of functioning come from non-acceptable medical sources and there is no underlying diagnosis offered from a physician or psychiatrist, there is no automatic error in the Judge's decision to review the counseling records and draw on them in support of a decision to adhere to the assessments offered in 2008 by the consulting experts, as those assessments were never eclipsed by any new clinical findings from acceptable medical sources. The Judge observed that Pehrson benefitted from medication and therapy in this timeframe and was able to weather through the process of divorcing her husband. He also notes relatively positive mental status reports, an original departure from work occasioned by child-rearing demands, the absence of record evidence of concentration, persistence, and pace problems, the absence of an assertion of social limitation, and adequate participation in activities of daily living. These factors supply substantial evidence when

8

combined with the opinions of the consulting experts and justify the Judge's rejection of Pehrson's allegations of more severe symptoms.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 6, 2011